IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KATE BELL, et al.,                              :

        Plaintiffs,                         :

          v.                              :   No. 1:08-CV-01563

THE CITY OF HARRISBURG,               :
CHARLES KELLAR,
STEPHEN REED,                         :
TINA MANOOGIAN-KIN,
and PIERRE RITTER,                    :
        Defendants

*M E M O R A N D U M*

## I.  Introduction

On August 20, 2008, the now fifty-one plaintiffs filed the instant lawsuit against the City of Harrisburg, Charles Kellar, Tina Manoogian-King, and Pierre Ritter. (Rec. Doc. No. 1).  The action stems from a mass arrest that occurred on September 2, 2007.  In their amended complaint, filed on August 25, 2008, plaintiffs allege violations of a number of constitutional rights and seek both compensatory and punitive damages.  (Rec. Doc. No. 3).

## II.  Procedural History

After the filing of the plaintiffs' amended complaint, the defendants filed their answer on November 11, 2008.  (Rec. Doc. No. 12).  On March 3, 2009, the defendants filed a motion for partial judgment on the pleadings.  (Rec. Doc. No. 25). On March 5, 2010, the then-assigned judge, the Honorable Thomas I. Vanaskie, granted the motion for partial judgment on the pleadings, dismissing with prejudice those claims raised by plaintiff James DeFrancesco.  (Rec. Doc. No. 56).  In addition,

on March 30, 2010, Judge Vanaskie approved a stipulation agreed to by the parties to dismiss Stephen Reed as a defendant. (Rec. Doc. Nos. 59 and 60).

Currently at issue before this court are the parties' cross motions for summary judgment. On April 1, 2010, the defendants filed their motion for summary judgment, as well as their statement of material facts and brief in support. (Rec. Doc. Nos. 63, 64, and 65). On April 26, 2010, the plaintiffs filed their own motion for summary judgment. (Rec. Doc. No. 70). The plaintiffs filed their brief in opposition to the defendant's motion and in support of their own motion on April 28, 2010. On April 29, 2010, they filed a responsive statement of material facts and their own statement of facts. (Rec. Doc. Nos. 75 and 76). The defendants filed a reply brief on May 14, 2010. (Rec. Doc. No. 81). By an ordered dated June 9, 2010, Judge Vanaskie referred the pending motions for summary judgment to United States Magistrate Judge William T. Prince for the preparation of a report and recommendation. (Rec. Doc. No. 86).[1]

On June 28, 2010, Magistrate Judge Prince issued a twenty-three (23) page report and recommendation. (Rec. Doc. No. 88). Pursuant to this report and recommendation, Magistrate Judge Prince recommends that the defendants' motion for summary judgment be granted, that the plaintiffs' motion for summary judgment be denied on all counts, and that the plaintiffs' complaint be dismissed.

---

[1] Pursuant to this order, Judge Vanaskie also directed the clerk of court to reassign the matter to another judge of the Middle District of Pennsylvania, in light of his elevation to the United States Court of Appeals for the Third Circuit. (Id.). Pursuant to this order, the instant case was reassigned to Judge James F. McClure, Jr., who passed away on December 17, 2010. On December 22, 2010, the case ws assigned to the undersigned.

*III.     Standard of Review*

A district court reviews <u>de</u> <u>novo</u> those portions of a magistrate judge's report and recommendation to which a party objects.  Middle District Local Rule 72.3.  The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  (<u>Id.</u>).

Summary judgment is appropriate when 1) there are no material facts in dispute; and 2) one party is entitled to judgment as a matter of law.  <u>Int'l Union, United Mine Workers of Am. v. Racho Trucking Co.</u>, 897 F.2d 1248, 1252 (3d Cir. 1990) (citing Fed. R. Civ. P. 56(c)).

A district court may properly grant a motion for summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "Material facts" are those which might affect the outcome of the suit.  <u>Justofin v. Metropolitan Life Ins. Co.</u>, 372 F.3d 517, 521 (3d Cir. 2004).

Regardless of who bears the burden of persuasion at trial, the party moving for summary judgment has the burden to show an absence of genuine issues of material fact.  <u>Aman v. Cort Furniture Rental Corp.</u>, 85 F.3d 1074, 1080 (3d Cir. 1996) (citations omitted).  To meet this burden when the moving party does not bear the burden of persuasion at trial, the moving party must show that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial.'"  <u>Jalil v. Avdel Corp.</u>, 873 F.2d 701, 706 (3d Cir. 1989) (quoting <u>Chippolini v. Spencer Gifts, Inc.</u>, 814 F.2d 893, 896 (3d. Cir.

1987)); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). More simply put, a party moving for summary judgment who does not bear the burden of persuasion at trial is not required to negate the nonmovant's claim, but only point out a lack of evidence sufficient to support the nonmovant's claim. Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1991).

Once the moving party meets its burden of showing an absence of genuine issues of material fact, the nonmoving party must provide some evidence that an issue of material fact remains. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party, however, cannot do so by merely offering general denials, vague allegations, or conclusory statements; rather the party must point to specific evidence in the record that creates a genuine issue as to a material fact. Celotex, 477 U.S. at 32; Anderson, 477 U.S. at 252; Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).

IV.     *Factual Background*

In his report and recommendation, Magistrate Judge Prince recited those facts not in dispute:

> Over the Labor Day weekend of 2007, plaintiffs attended the "Seventh Annual Camp Out with the Djs" (campout), held on McCormick's Island in the Susquehanna River. (Doc. 76, 15, 1.) On the morning of September 2, 2007, Christian Yanez learned about the campout and tried to swim to McCormick's Island. (*Id.* 34.) Mr. Yanez never made it. With cocaine and alcohol still in his system, Mr. Yanez lacked the strength or stamina to complete the swim and drowned. (*Id.* 34-35.) Harrisburg officials launched a search for Mr. Yanez, in the process learning for the first time about the campout on McCormick's Island. (Doc. 64, 2.)
>
> In the hours following the Harrisburg officials' discovery of the campout, City officials and police officers took boats over to the island to inspect and investigate the situation.

(*Id.* 5.)  Upon arrival, the officials and officers discovered trees cut down, primitive pit toilets that had been dug, a lingering smell of herbicide in the air, and evidence of drug and alcohol use. (*Id.* 6-8.)

Police officials subsequently transported over one hundred attendees of the campout back to the mainland by boat. (*Id.* 9.)  Upon arrival, Harrisburg police checked attendees' identification and ran a warrant search. (*Id.* 10.)  Meanwhile, the police contacted the District Attorney's office to discuss what charges might be brought against the campout attendees, but received no guidance concerning whether the attendees violated any of Harrisburg's ordinances. (*Id.* 11.)  The Director of Harrisburg's Parks and Recreation Department, Tina Manoogian-King, was the City official most knowledgeable about the ordinances pertaining to Harrisburg's parks. (*Id.* 12.)  Director King reviewed the ordinances and highlighted the ones that she believed were violated by the campout attendees. (*Id.*)  She gave her highlighted list to the police, who conducted their own review and concluded that there had been multiple violations of the ordinances. (*Id.* 13.)  The police decided to charge the attendees with only one violation of the Harrisburg ordinances: the provision prohibiting attendance of an unpermitted gathering of twenty or more people in a city park. (*Id.* 14.)

Once the decision to charge the campout attendees was made, attendees who had proffered Pennsylvania identification were issued citations for a summary offense and released from custody.[] (*Id.* 19.)  Attendees who proffered out-of-state identification were issued citations and taken into custody. (*Id.*)  These out-of-state attendees were handcuffed or leg-shackled and taken to the Harrisburg Police Station, where they were processed and placed in holding cells while awaiting arraignment. (*Id.* 20.)

At the arraignment, which took place within 48 hours, a Magisterial District Judge set the out-of-state attendees' collateral at $1000, which, including court costs, required each attendee to tender $1051 in order to be released on their own recognizance. (*Id.* 22.)  Some attendees were able to pay the full amount; others negotiated the collateral to a lower amount that they could afford; but many were unable to post the collateral. (*Id.* 23.)  Those who could not pay were transferred to the Dauphin County Prison. (*Id.*)

The following hearing for the first group of out-of-state attendees led to the dismissal of the charges against them. (*Id.* 24.)  During the same hearing, the charges against all

other attendees were dismissed by agreement of counsel.
(*Id.*)

(Rec. Doc. No. 88 at 1-3) (footnote omitted).  In filings with this court, plaintiffs contend that the magistrate judge has "largely glosse[d] over Tina King's role in directing the arrests of the Plaintiffs."  (Rec. Doc. No. 96 at 3; <u>see</u> <u>also</u> Rec. Doc. No. 95).  Plaintiffs contend that the magistrate judge did not go far enough in describing the actions of Manoogian-King, contending that she made such statements as, "I want these people f*cking arrested," and demanded that the campout's organizers be arrested for murder.  (Rec. Doc. No. 96) (citing Rec. Doc. Nos. 70-5, 70-8).  Plaintiffs argue that Manoogian-King was in an irritated state, "ranting and raving" and referring to McCormick's Island as "[her] island."  (<u>Id.</u>) (citing Rec. Doc. Nos. 70-5, 70-8).  Plaintiffs contend that Manoogian-King "played the central role" in the arrest of the plaintiffs. (<u>Id.</u> at 4).

Except for two limited areas, the plaintiffs object to all aspects of the magistrate judge's report and recommendation.  (Rec. Doc. No. 96 at 6-7).

V.    *Discussion*

A.  *The Merger of Plaintiffs' Claims Against Those*
    *Municipal Officers Sued in Their Official Capacities*
    *with Those Claims Against the Municipality.*

In his report and recommendation, the magistrate judge concludes that, "[t]o the extent that plaintiffs make[] claims against Kellar and King in their official capacities, those claims should be treated as claims against the City of Harrisburg." (Rec. Doc. No. 88 at 6-7).  The plaintiffs do not object to this conclusion.  (Rec. Doc. No. 96 at 6-7) (noting that "[t]he Plaintiffs object to each and every portion of the Report and Recommendation, with the exception of . . . the dismissal of official

capacity claims against the individual defendants").  As such, we will uphold this

portion of the magistrate judge's report and recommendation and dismiss the official

capacity claims against defendants Kellar and Manoogian-King.

> *B. Magistrate Judge Prince's Recommendation That*
> *Summary Judgment be Granted in Favor of the*
> *Defendants as to the Plaintiffs' Excessive Bail Claim*

In his report and recommendation, Magistrate Judge Prince also

recommends that summary judgment be entered in favor of the defendants as to the

plaintiffs' excessive bail claim, filed under the Eighth Amendment to the United States

Constitution.  (Rec. Doc. No. 88 at 19-21).  The plaintiffs do not object to the

magistrate judge's conclusion.  (Rec. Doc. No. 96 at 6-7) (noting that "[t]he Plaintiffs

object to each and every portion of the Report and Recommendation, with the

exception of the Court's ruling on the Plaintiffs' excessive bail claim . . .").  Therefore,

we will uphold this portion of the magistrate judge's report and recommendation and

enter summary judgment in favor of defendants as to the plaintiffs' Eighth Amendment

excessive bail claim.

### C. Whether Probable Cause Existed to Arrest and Prosecute the Plaintiffs for Violations of Ordinance 10-301.20(a).[2]

Plaintiffs initially contest the magistrate judge's conclusion that probable cause existed to both arrest and prosecute the plaintiffs for violations of Ordinance 10-301.20(a). To make out a false arrest claim or a malicious prosecution claim, the plaintiffs must demonstrate at trial that the police lacked probable cause to either arrest or initiate proceedings against the plaintiffs. See Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995); Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007). Therefore, if probable cause to arrest and initiate criminal proceedings against the plaintiffs did in fact exist, the plaintiffs' false arrest and malicious prosecution claims must fail.

Probable cause exists when, at the moment that police officers make an arrest, "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964) (citing Brinegar v. United States, 338 U.S. 160, 175-76 (1949)). "The determination that probable cause exists for a warrantless arrest is fundamentally a factual analysis that must be performed by the officers at the scene. It is the function of the court to determine whether the objective facts available to the

---

[2] According to Ordinance 10-301.20(a):

No person shall engage in, participate in, aid, form or organize any assembly or group of twenty or more persons . . . in any park unless a permit therefor has been obtained from the Director and unless such permit is carried by the person heading or leading such activity.

(Rec. Doc. No. 71-5 at 10). The purpose of the above requirement "is to enable groups to reserve an area of the park for planned activities and to provide the City better means to safeguard the health, safety and welfare of citizens who use the City's parks, and this chapter shall be interpreted in accordance with this provision." (Id.).

officers at the time of arrest were sufficient to justify a reasonable belief that an offense was being committed." United States v. Glasser, 750 F.2d 1197, 1206 (3d Cir. 1984). In making such a determination, "[a] court must look at the 'totality of the circumstances' and use a 'common sense' approach to the issue of probable cause." Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997) (quoting Glasser, 750 F.2d at 1205).

As noted above, see supra, note 2, Ordinance 10-301.20(a) clearly states that "[n]o person shall engage in, participate in, aid, form or organize any assembly or group of twenty or more persons . . . in any park unless a permit therefor has been obtained from the Director and unless such permit is carried by the person heading or leading such activity." Therefore, in order to have probable cause to arrest and prosecute the plaintiffs for violations of Ordinance 10-301.20(a), the objective facts available to the police officers at the time of arrest of the plaintiffs must have been sufficient to justify a reasonable belief as to the following: (1) that the plaintiffs participated in an event of twenty or more people on McCormick's Island; (2) that a permit had not been issued for the event on McCormick's Island; and (3) that McCormick's Island is a "park," as that term is defined for the purposes of Ordinance 10-301.20(a).

As the plaintiffs have admitted that they participated in an event of twenty or more people on McCormick's Island and that no permit had been issued for such an event, the only remaining question is whether McCormick's Island is a "park," as that term is defined for purposes of Ordinance 10-301.20(a). A "park" is defined under Ordinance 10-301.1(c) as meaning "a park, reservation, playground, recreation center or any other area in the City, owned or used by the City, and devoted to active or passive recreation or leisure activity." (Rec. Doc. No. 71-5 at 2). The parties concede

that McCormick's Island was an "area in the City" that was "owned . . . by the City" at the time of the event in question.  Therefore, the sole remaining issue is whether McCormick's Island was "devoted to active or passive recreation or leisure activity." (Id.).

The magistrate judge concluded that the undisputed facts established that McCormick's Island is a "park," and we agree.  In his report and recommendation, the magistrate judge noted that the plaintiffs themselves emphasized that the City of Harrisburg "promotes unrestricted public use of McCormick's Island as part of the Susquehanna River Trail," and also that McCormick's Island is "to be used for public enjoyment."  (Rec. Doc. No. 88 at 9, Rec. Doc. No. 76 at 8).  In addition, the magistrate judge pointed to the City ordinance of 1912 indicating that the City took the land known as McCormick's Island "for public park purposes."  (Rec. Doc. No. 88 at 9).  In light of the above, the magistrate judge concluded that McCormick's Island constitutes a "park" under Ordinance 10-301.20(a).  The plaintiffs point to, inter alia, various examples of testimony in which a number of individuals refer to McCormick's Island by different terms, the fact that McCormick's Island was not listed on the City's website as being a park, and the fact that no signs were posted on McCormick's Island by the City.  (Rec. Doc. No. 76 at 13, Rec. Doc. No. 102 at 3-9).  We find these arguments unavailing based on the simple text of the ordinance.  Ordinance 10-301.20(a) does not require that the Island must be referred to as a "park," that it be listed on the City's website as a park, that particular City officials believe the area to be a "park," or that signs be posted on McCormick's Island indicating that it is a park. Quite simply, all that the ordinance requires is that the Island be "devoted to active or passive recreation or leisure activity."

The court concludes that, despite the plaintiffs' attempts to show otherwise, McCormick's Island was dedicated, at the very least, to passive or active recreation in the form of space for wildlife and outdoor human activity. McCormick's Island was a "park" under Ordinance 10-301.20(a) and the objective facts available to the police officers at the time of the arrest of the plaintiffs were sufficient to justify a reasonable belief that Ordinance 10-301.20(a) was being violated. Defendants, as such, had probable cause to arrest and prosecute the plaintiffs for violations of that ordinance. Inasmuch as probable cause existed, and a lack of probable cause is a required element in both a false arrest claim as well as a malicious prosecution claim, we conclude that the magistrate judge was correct in recommending the dismissal of the plaintiffs' false arrest and malicious prosecution claims. (Rec. Doc. No. 88 at 12-13).

### D. Whether the City of Harrisburg's Interpretation of the Parks Ordinances Violates the First Amendment

At the outset, the plaintiffs contend that the City of Harrisburg's interpretation of the Harrisburg City Parks ordinances is violative of the First Amendment to the United States Constitution.[3] Plaintiffs point to two bases for this contention: (1) the ordinance at issue violates the plaintiffs' right to peaceably assemble, and (2) the ordinance at issue is unconstitutionally vague. We will address each of these objections in turn.

First, as to the plaintiffs' contention that the ordinance violates their First Amendment right to peaceably assemble, the defendants argue that the plaintiffs have waived this argument. We agree with the defendants. The plaintiffs are able to point to only four isolated instances in which, they allege, they raised the First Amendment

---

[3] See supra, note 2.

right to assemble issue. (Rec. Doc. No. 102 at 13). These instances are insufficient, however, to counter the defendants' waiver argument. It is noteworthy that two of the instances raised by plaintiffs' quite simply do not raise the issue of the First Amendment right to assemble as to *the ordinance at issue in this case.* (See Rec. Doc. No. 76 at 19 ("The City of Harrisburg has previously had portions of its Parks Ordinances ruled unconstitutional, in that they inhibited the express [sic] of freedom of speech and assembly."); see also Rec. Doc. No. 75 at 22 ("This is not the first time that the City of Harrisburg has had legal difficulty relative to its Parks Ordinances.")).

At two points in the extensive amount of briefing related to the instant motion for summary judgment, the plaintiffs do, arguably, and in a tangential fashion, touch on the issue of the First Amendment right to assemble. First, in their notice of motion, the plaintiffs note, "Given the constitutional right to assemble implicated by this case, the Parks ordinance is also unconstitutionally vague, as interpreted by the City of Harrisburg in this instance, and is also an unconstitutional burden on First Amendment rights." (Rec. Doc. No. 70 at 3). Second, in the plaintiffs' corrected memorandum of law concerning the instant motion for summary judgment, the plaintiffs contend that the ordinances at issue "also negatively affect the right to freedom of assembly, in that requiring anyone seeking to attend an assembly as compared to a single group, to obtain a permit would impermissibly discourage individuals from assembling at all, regardless of their purpose." (Rec. Doc. No. 75 at 15. The plaintiffs go on to argue that the ordinance provisions at issue "are both unconstitutionally vague, and impermissibly limit the freedom of assembly." (Id. at 22).

We find that this argument fails to adequately demonstrate that the plaintiffs properly raised the issue whether Ordinance 10-301.20(a) was violative of the plaintiffs' First Amendment right to peaceably assemble. The proper time for raising

the issue was before Magistrate Judge Prince, not before this court in briefing of objections to the magistrate judge's report and recommendation.  See Jimenez v. Barnhart, 46 Fed. Appx. 684, 685 (3d Cir. Pa. 2002) ("[B]ecause Appellant raised the [instant] argument . . . for the first time in her objections to the Magistrate Judge's Report and Recommendations, and not in her opening brief, we deem this argument waived.") (citing Laborers' Int'l Union of N.A. v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994)).  The fact that the plaintiffs made two references, in passing, to the First Amendment is not sufficient for this court to conclude that the plaintiffs properly raised the right to assemble issue before the magistrate judge.  See Laborers' Int'l Union, 26 F.3d at 398 ("An issue is waived unless a party raises it in its opening brief, and for those purposes 'a passing reference to an issue . . . will not suffice to bring that issue before this court.'") (quoting Simmons v. City of Philadelphia, 947 F.2d 1042, 1066 (3d Cir. 1991)).

Second, plaintiffs contend that the parks ordinances at issue are unconstitutionally vague.  A criminal law will be deemed void on vagueness grounds for two reasons: (1) "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits, or (2) "if it authorizes or even encourages arbitrary and discriminatory enforcement."  Hill v. Colo., 530 U.S. 703, 732 (2000).  "'It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits . . . .'"  City of Chi. v. Morales, 527 U.S. 41, 56 (1999) (quoting Giaccio v. Pennsylvania, 382 U.S. 399, 402-403 (1966)).  In the context of a criminal case, "the Supreme Court has held that since vagueness attacks are based on lack of notice, 'they may be overcome in any specific case where reasonable persons would know their conduct puts [them] at risk' of punishment under the statute."  San Filippo v.

Bongiovanni, 961 F.2d 1125, 1136 (3d Cir. 1992) (quoting Maynard v. Cartwright, 486 U.S. 356, 361 (1988)).

We are constrained to agree with the defendants and conclude that the parks ordinance at issue is not void for vagueness.  Ordinance 10-301.20(a) clearly states that "[n]o person shall engage in, participate in, aid, form or organize any assembly or group of twenty or more persons . . . in any park unless a permit therefor has been obtained from the Director and unless such permit is carried by the person heading or leading such activity."  (Rec. Doc. No. 71-5 at 10).  In unambiguous terms, the ordinance prohibits any person from engaging in, participating in, aiding, forming, or organizing any such assembly or group composed of twenty or more individuals in any park[4] without a proper permit.  Furthermore, the ordinance clearly states that everyone in attendance need not carry the permit; in fact, only the leader or head of the group or assembly must do so.  In this case, the plaintiffs' conduct clearly falls within the ambit of the ordinance, and the language of this ordinance is neither vague nor ambiguous.  As such, the plaintiffs' claim alleging that the ordinance at issue is vague must fail.

### E.  Whether the Plaintiffs' Fourth Amendment Right to be Free from Unreasonable Seizures and Right to Travel Were Violated by Defendants

The plaintiffs also have filed a claim against the defendants, alleging that they violated the plaintiffs' Fourth Amendment right to be free from unreasonable seizure when the plaintiffs were arrested and jailed because of their out-of-state residency.[5]

---

[4]  As we concluded above, McCormick's Island is a park for the purposes of enforcement of Ordinance 10-301.20(a).  See supra, Part V(3).

[5] As noted in-state residents were issued citations and released.

14

In the context of analyzing an arrest under the Fourth Amendment, the constitutionality of such an arrest is determined by the law of the state in which the arrest was made.  See Wright v. City of Philadelphia, 409 F.3d 595, 601 (3d Cir. 2005) (citing United States v. Myers, 308 F.3d 151, 255 (3d Cir. 2002)).  According to Pa. R. Crim. P. 441(B)(1) and (2),

> When a defendant has been arrested without a warrant, the arresting officer shall promptly release the defendant from custody when the following conditions have been met:
>
> > (1) the defendant poses no threat of immediate physical harm to any other person or to himself or herself; and
> >
> > (2) the arresting officer has reasonable grounds to believe that the defendant will appear as required.

Pa. R. Crim. P. 441(B)(1)-(2) (2010).  In the instant case, there is no contention by either party that the plaintiffs posed any type of "threat of immediate physical harm"; instead, the question arises whether "the arresting officer[s] [had] reasonable grounds to believe that the [plaintiffs] [would] appear as required."  (Id.).

A number of factors, both specific to this case and specific to this rule, complicate the above determination.  Initially, the language of Rule 441(B)(2) raises the question of what constitutes "reasonable grounds" to believe that the plaintiffs, who were from outside of Pennsylvania would appear upon release.  The Comments to Rule 441 state that the term "reasonable grounds" includes "such things as concerns about the validity of the defendant's address, the defendant's prior contacts with the criminal justice system, and the police officer's personal knowledge of the defendant." Pa. R. Crim. P. 441, cmt.  However, Rule 441 was substantially amended in 2005. Prior to that amendment, the Rule read as follows:

> When a defendant has been arrested without a warrant, the arresting officer *may, when the officer deems it appropriate*, promptly release the defendant from custody when the following conditions have been met:

> (1) *the defendant is a resident of the Commonwealth;*
>
> (2) the defendant poses no threat of immediate physical harm to any other person or to himself or herself;
>
> (3) the arresting officer has reasonable grounds to believe that the defendant will appear as required; and
>
> (4) the defendant does not demand to be taken before an issuing authority.

Pa. R. Crim. P. 441(B)(1)-(4) (2006) (emphasis added); see also 35 Pa. Bull. 3901, 3907 (July 16, 2005). According to the Pennsylvania Rules of Criminal Procedure Committee:

> The changes to Rule 441 are the same as or comparable to the Rule 519 changes discussed more fully below-the prompt release provisions are mandatory if the criteria in paragraph (B) are met, the residency requirement is deleted as no longer necessary, and the meaning of "reasonable grounds" in paragraph (B)(3) is explained in the Comment.
>
> . . .
>
> In reviewing the five criteria set forth in paragraph (B)(1) [of Rule 519], the members concluded the residency requirement in paragraph (a) and the criteria that the defendant does not demand to be taken before the issuing authority in paragraph (e) are unnecessary because these two criteria are considerations when making a judgment whether there are reasonable grounds to believe the defendant will appear as required, the criteria in paragraph (d).

35 Pa. Bull. 3901, 3916. We agree with the defendants that this history of Rule 441 makes clear that the police may still consider an individual's residency when making a determination whether "reasonable grounds" exist such that an officer believes that the individual will appear. However, the police admit that they did not use the plaintiffs' residency as simply one factor in their "reasonable grounds" analysis. Instead, to the

Harrisburg police, one factor was dispositive:[6] those out-of-state residents arrested after the campout incident were subjected to a full custodial arrest without a warrant solely because of their out-of-state residency.

As the defendants note, the plaintiffs have failed to deny the defendants' contention that "[p]olice officials were aware that if non-residents did not appear for their summary hearings, extradition would not occur in their resident states." (Rec. Doc. No. 64 at 10, Rec. Doc. No. 76 at 10). We find the fact that extradition would not occur to be of utmost importance because, if the plaintiffs had not been arrested, the failure to arrest "would have been tantamount to releasing [the plaintiffs] without charge. Neither law nor reason could justify such a result." Commonwealth v. Williams, 568 A.2d 1281, 1285 (Pa. Super. Ct. 1990).

We agree with the magistrate judge's conclusion that the Fourth Amendment's prohibition of unreasonable seizures was not violated in this case, as "a person of reasonable caution in defendants' position could have concluded that plaintiffs were not likely [to] appear when summoned . . . ." (Rec. Doc. No. 88 at 17). We also agree that the plaintiffs' arrests were made in accordance with Rule 441. (Id.). As such, we will deny the plaintiffs' objections as to this recommendation and dismiss the plaintiffs' Fourth Amendment unreasonable seizure claims.[7]

---

[6]  In fact, it was the policy of Harrisburg City Police that individuals in such a situation be subjected to a full custodial arrest with language tracking that of the 2005 version of Rule 441. (See Rec. Doc. No. 70-13, Exhbt. 36, Harrisburg Police General Order 03-88).

[7]  We find the plaintiffs' contentions, that the defendants violated the Equal Protection Clause pertaining to the right to travel by subjecting them to a full custodial arrest, while Pennsylvania residents were released after being issued citations, to be similarly unavailing. As Justice Jackson explained, certain violations of state laws "'warrant any public authority in stopping a man where it finds him and arresting his progress across a state line quite as much as from place to place within the state.'" Jones v. Helms, 452 U.S. 412, 419 n.15 (1981) (quoting Edwards v. California, 314 U.S. 160, 184 (1941) (Jackson, J., concurring). We agree with the analysis of this issue by Magistrate Judge Prince as contained in his report and recommendation and conclude that the plaintiffs' objections to the magistrate judge's recommendation on this issue are unpersuasive. (Rec. Doc. No. 96 at 15-16). Therefore, we

### F. The Magistrate Judge's Conclusion as to Municipal
### Liability and the Applicability of Qualified Immunity

The plaintiffs also contest the magistrate judge's conclusion that the plaintiffs' claims alleging municipal liability be dismissed and that defendants Manoogian-King, Ritter, and Kellar are entitled to claim qualified immunity. (Rec. Doc. No. 96 at 21). In this regard, the plaintiffs contend that the magistrate judge's conclusion "was made in error" and that their municipal liability claims should be revived. (Id.). Defendants claim that the magistrate judge properly decided that defendants Manoogian-King, Ritter, and Kellar should be entitled to qualified immunity, and that the plaintiffs' municipal liability claims cannot be substantiated, because the plaintiffs have failed to "establish[] a valid constitutional violation against any of the individual Defendants . . . ." (Rec. Doc. No. 99 at 33-37).

### 1. Qualified Immunity

Saucier v. Katz mandates a two-step analysis concerning qualified immunity. First, a court must decide whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001) Second, a court must decide whether that right was clearly established. Id. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202.[8]

In the present case, we agree with Magistrate Judge Prince that the facts alleged, taken in the light most favorable to the plaintiffs, show that the police officers'

_____

will enter summary judgment in favor of the defendants as to the plaintiffs' right to travel claim.

    [8] Earlier this year, the Supreme Court held that Saucier's "rigid order of battle" is not a mandatory requirement. Pearson v. Callahan, 129 S.Ct. 808, 817 (2009). Lower courts can use their discretion to decide which of the two prongs to consider first. Id. at 818 .

conduct did not violate any of the constitutional rights of the plaintiffs. As such, the first step in the analysis found in Saucier v. Katz makes clear that the defendants are entitled to qualified immunity. However, even if it could be concluded that the defendants violated the plaintiffs' constitutional rights, it cannot be said that those rights were clearly established at the time of the alleged violation. See Saucier, 533 U.S. at 201. Therefore, we will deny the plaintiffs' objections and uphold the magistrate judge's recommendation that defendants Manoogian-King, Ritter, and Kellar be entitled to qualified immunity. (Rec. Doc. No. 88 at 21-23).

### 2. Municipal Liability

As the Supreme Court held in the seminal case of Monell v. Dep't of Soc. Servs., a local government will be responsible under § 1983 "when execution of [the] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." 436 U.S. 658, 695 (1978). The Court of Appeals for the Third Circuit has noted, "[T]he Supreme Court [in Monell] held that municipal liability under 42 U.S.C. § 1983 cannot be based on the respondeat superior doctrine, but must be founded upon evidence that the government unit itself *supported a violation of constitutional rights*." Watson v. Abington Twp., 478 F.3d 144, 155 (3d Cir. 2007) (citing Monell, 436 U.S. at 691-95) (emphasis added). As we agree with the magistrate judge's conclusion that the plaintiffs' constitutional rights have not been violated in the instant case, we similarly agree that the plaintiffs' municipal liability claims must fail. We endorse the magistrate judge's conclusion that the plaintiffs' Monell claims must fail and deny the plaintiffs' objections on this point.

*VI.* *Conclusion*

We will adopt Magistrate Judge Prince's report and recommendation in full and will grant the defendants' motion for summary judgment (Rec. Doc. No. 64) and deny the plaintiffs' cross motion for summary judgment (Rec. Doc. No. 70). In addition, we conclude that oral argument would not be helpful in resolving this case and we will deny the jointly-filed motion for oral argument.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: January 10, 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KATE BELL, et al.,                          :

        Plaintiffs                  :

        v.                          :   No. 1:08-CV-01563

THE CITY OF HARRISBURG,                     :
CHARLES KELLAR,
STEPHEN REED,                               :
TINA MANOOGIAN-KIN,
and PIERRE RITTER,                          :
        Defendants


*O R D E R*

      AND NOW, this 10th day of January, 2011, pursuant to the

accompanying memorandum, it is Ordered that:

      1.    Magistrate Judge Prince's Report and Recommendation
           is accepted and approved.  (doc. 88).

      2.    Defendants' motion for summary judgment is GRANTED.
            (doc. 64).

      3.    Plaintiffs' cross motion for summary judgment is DENIED.
           (doc. 70).

      4.    The parties' jointly-filed motion requesting that this court
           hear oral argument in this matter is DENIED.
           (doc. 103).

      5.    The Clerk of Court is directed to close the file.


                    /s/William W. Caldwell
                    William W. Caldwell
                    United States District Judge